# 25-498-cv

## United States Court of Appeals for the Second Circuit

MICHAEL A. HAYDEN,

*Plaintiff-Appellant,*

*v.*

JEFF KOONS AND JEFF KOONS LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of New York

**BRIEF FOR APPELLANT**

JORDAN FLETCHER
FLETCHER LAW, PLLC
234 Fifth Avenue, 2nd Floor
New York, NY 10001
jordan@fletcherlaw.co
(212) 320-8945
*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………......………....iv

PRELIMINARY STATEMENT…………………………….…………………1

JURISIDCTIONAL STATEMENT……………………………………….…...2

ISSUES PRESENTED FOR REVIEW…………………….…………….…..3

STATEMENT OF THE CASE……………………………….……………....4

A.    Factual Background……………………………….…………….…4

       1.    Michael A. Hayden and the Original Work………………...…4

       2.    Jeff Koons and the Koons Works………………………………5

       3.    Hayden Discovers the Koons Works in 2019…………………7

B.    Procedural History…………………………….…………………9

SUMMARY OF ARGUMENT…………………………..………………...11

STANDARD OF REVIEW………………………………………………..12

ARGUMENT………………………………………………………....13

A.    POINT I: THE DISTRICT COURT MADE TWO FUNDAMENTAL ERRORS IN DISMISSING HAYDEN'S INFRINGMENT CLAIM AS TIME-BARRED …………………………………………………13

       1.    The Parties' Burdens on Summary Judgment…………….…13

       2.    The District Court Failed to Identify or Apply the Correct Legal Standard for Inquiry Notice………………….……14

          i.    Legal Standard for Inquiry Notice…………….….…14

          ii.    The District Court Applied the Wrong Legal Standard….17

iii. The District Court Substituted Its Own Speculation for Hayden's Sworn Testimony………………………...…..20

B. POINT II: THE DISTRICT COURT ERRED WHEN IT DISMISSED HAYDEN'S DMCA CLAIM AS MOOT……..………....22

C. POINT III: THE DISTRICT COURT ERRED WHEN IT FAILED TO GRANT RECONSIDERATION OF THE DAMAGES PERIOD….24

CONCLUSION………..………………………………………..……………25

CERTIFICATE OF COMPLIANCE …………………………………………27

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................14

*Belot v. Burge*, 490 F.3d 201 (2d Cir. 2007).........................................................13

*Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73 (2d Cir. 2019) ...........13

*Blanch v. Koons*, 485 F. Supp. 2d 516 (S.D.N.Y. 2007).........................................5

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995)....................................13

*Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, 16 Civ. 617, 2017 WL 432805 (S.D.N.Y. Jan. 30, 2017)......................................................................15

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017)...........................................................................19

*Gonzalez v. Hasty*, 651 F3d 318 (2d Cir. 2011)....................................................14

*Hayes v. New York City Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996)..............14, 21

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010).................................................14, 21

*Kowalchuck v. Metro. Transportation Auth.*, 94 F.4th 210 (2d Cir. 2024)..........12

*Krechmer v. Tantaros*, 747 Fed. App'x 6 (2d Cir. 2018) ....................................23

*Masi v. Moguldom Media Grp., LLC*, No. 18 Civ. 2402, 2019 WL 3287819 (S.D.N.Y. July 22, 2019).....................................................................................15

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009).............13

*McDermott v. This Dog's Life Corp.*, 730 F. Supp. 3d 73 (S.D.N.Y. 2024)........15

*Meyer v. Seidel*, 89 F.4th 117 (2d Cir. 2023) ................................................ passim

*Newman v. Warnaco Grp., Inc.*, 335 F.3d 187 (2d Cir. 2003)...............................16

*Oliveri v. Stifel, Nicolaus & Co.*, 112 F.4th 74 (2d Cir. 2024).............................13

*Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663 (2014) .....................................23

*Phhhoto, Inc. v. Meta Platforms, Inc.*, 123 F.4th 592 (2d Cir. 2024) .11, 15, 16, 19

iv

*Psihoyos v. John Wiley & Sons*, Inc., 748 F.3d 120 (2d Cir. 2014). .....................15

*Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020) ...................................9, 15, 20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406
  (2d Cir. 2008) ...............................................................................16, 19, 20, 21

*United States v. Bari*, 599 F.3d 176 (2d Cir. 2010)...............................................23

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992).
  ...........................................................................................................................25

*Warner Chappell Music, Inc.  v. Nealy*, 601 U.S. 366 (2024) ...................... passim

*Warren v. Freedenfeld Assocs. Inc. v. McTigue*, 531 F.3d 38 (1st Cir. 2008) ......15

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) .......................15

## Statutes

17 U.S.C. § 101 ..........................................................................................................2

17 U.S.C. § 106A........................................................................................................9

17 U.S.C. § 1202(a) ...............................................................................................9, 23

17 U.S.C. § 501 ...................................................................................................2, 9, 23

17 U.S.C. § 507(b) ....................................................................................................14

17 U.S.C. §1203 ..........................................................................................................2

28 U.S.C. § 1291 .........................................................................................................3

28 U.S.C. § 1331 .........................................................................................................2

28 U.S.C. § 1338 .........................................................................................................2

## Rules

Fed. R. Civ. P. 54(b)................................................................................................25

## PRELIMINARY STATEMENT

Plaintiff Michael Hayden first learned in April 2019 that the copyright to his original sculpture – which he created in Italy in 1988 – had been infringed by defendant Jeff Koons in the early 1990s. Hayden filed this lawsuit within three years of that discovery.

The U.S. District Court for the Southern District of New York (Reif, J., *sitting by designation from the Court of International Trade*) made two fundamental errors when it held on summary judgment that Hayden's copyright infringement claim is time-barred. First, the District Court failed to identify and apply the correct legal standard for inquiry notice in "discovery rule" cases, *i.e.*, that a plaintiff must have actual knowledge of facts that would suggest the *probability* that infringement had occurred. Instead, the District Court imposed a novel and legally unsound burden of investigation upon the unwitting plaintiff. Second, the District Court engaged in its own speculation to assume facts not in evidence, and it relied on that speculation to contradict Hayden's sworn and unchallenged testimony. These errors led the District Court to a result that is deeply flawed.

The District Court also erred when it dismissed Hayden's Digital Millennium Copyright Act ("DMCA") claim as moot. The District Court failed to recognize that Hayden's DMCA claim accrued independently from

1

his infringement claim, based on separate – and much later occurring – website displays of the Koons Works. The District Court did not consider whether Hayden was on inquiry notice of these later displays, nor did it identify any facts that could support such a finding.

Finally, the District Court abused its discretion when it denied Hayden's request for reconsideration of the court's earlier decision to limit damages to the three-year period before filing. The Supreme Court held last year in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024) that the Copyright Act contains no time-based limit on monetary recovery for timely-filed infringement claims, and the lower court's rejection of Hayden's request as moot was predicated on the legal errors noted above.

This Court should vacate and reverse to grant (i) summary judgment in Hayden's favor as to the Defendants' statute of limitations affirmative defense, and (ii) reconsideration with respect to the applicable damages period. The Court should also vacate the District Court's dismissal of Hayden's DMCA claim.

## **JURISIDCTIONAL STATEMENT**

This case involves claims arising under the Copyright Act, 17 U.S.C. § 101, et seq. The Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 501 and 1203 and 28 U.S.C. §§ 1331 and 1338. On February 25, 2025, the District Court denied Hayden's motion for summary judgment and granted

Defendants' cross-motion for summary judgment dismissing all claims in the Complaint based upon, *inter alia*, statute of limitations and mootness. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Did the District Court err in determining that Hayden's copyright infringement claim is time-barred?

2. Did the District Court err when it failed to identify or apply the correct legal standard for inquiry notice in discovery rule cases?

3. Did the District Court err when, in ruling on cross-motions for summary judgment, it rejected undisputed evidence of record and relied instead on its own speculation to contradict Hayden's sworn testimony?

4. Did the District Court err in dismissing Hayden's DMCA claim as moot when it failed to consider whether Hayden was on inquiry notice of that separately-accruing claim?

5. Did the District Court abuse its discretion in denying Plaintiff's request to move for reconsideration as to the applicable damages period, given the Supreme Court's holding in *Warner Chappell Music, Inc. v. Nealy*?

## STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    Michael A. Hayden and the Original Work

Hayden is an artist and a U.S. citizen who resided primarily in Italy from the early 1980s until 2007. (SPA4; A293, A626.) During that time, he held various jobs, including working as a set and prop designer for theatre companies and as a visual artist. (SPA4; A293, A627.)

In the late 1980s, Hayden created and sold several theatrical props to the Italian production company Diva Futura. (SPA4; A294, A628.) Diva Futura was co-owned by Italian adult erotic performer Ilona Staller, who performed in live theatre and films under the stage name "Cicciolina," and Ricardo Schicchi, Staller's manager, director, and photographer of much of her erotic work. (SPA4-5; A294, A628.) Staller was also, at that time, a member of the Italian Parliament. (SPA5; A294, A628.)

In 1988, Hayden created a large, three-dimensional sculptural work depicting a giant serpent wrapped around a pedestal of boulders (the "Original Work"), intending that Staller might use it as a platform on which to perform. (SPA5; A294-95, A629.) After completing the Original Work, Hayden sold it to Diva Futura. (SPA5-6; A295, A632-33.) No formal contract was made concerning exploitation of the Original Work or the copyright therein, nor did Hayden grant written or verbal permission for Diva Futura

4

to authorize third parties to use, reproduce, create derivatives of the Original Work. (SPA6; A295, A632-33.) Hayden retained all rights to the Original Work under copyright law. (A428, A434-35, A633-35.)

The Original Work was the last project that Hayden ever sold to Diva Futura, and Hayden had no further communications with Staller or Schicchi after its delivery. (SPA6; A295, A633.) In 2007, Hayden left Italy and moved to Nicaragua, where he lived until July 2022. (A293, A626.)

### 2. Jeff Koons and the Koons Works

Koons is one of the most controversial living artists in the world and is known as an "appropriation artist." *Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007). As described by U.S. District Judge Louis L. Stanton, "[a]ppropriation artists take other artists' work and use it in their own art, appropriating and incorporating it in their own product with or without changes. Because of this appropriation, often . . . done without giving credit to the original artist, the appropriation artists can expect that their work may attract lawsuits." *Id.*

In 1989 and 1990, Koons hired Staller and traveled to Italy to be photographed with her in sexually explicit positions, in preparation for a new series of works which would be called "Made in Heaven." (SPA7; A636-37.) The photo sessions occurred on Staller's own sets at Schicchi's studio and incorporated a variety of the theatrical backdrops, props, and costumes

that Staller had used previously in her other erotic work. (SPA7; A637.)

Koons and Staller used the Original Work as a theatrical set piece during their photo sessions, and Koons later incorporated depictions and/or derivative versions of the Original Work into at least six different artworks that became part of his "Made in Heaven" series.[1] (SPA7; A637.) Three of these works are the subject of this lawsuit: *Made in Heaven*, *Jeff and Ilona (Made in Heaven)*, and *Jeff in the Position of Adam* (altogether, the "Koons Works"). (SPA7; A637-38.) At no time did Koons, Staller, or Schicchi notify Hayden about Koons' use of the Original Work, nor did Koons ever seek or obtain Hayden's permission to reproduce the Original Work in the Koons Works. (A317-18; A638.) Of the three Koons Works, *Jeff and Ilona (Made in Heaven)* is the only one to ever be exhibited publicly in Italy; it premiered at the Venice Biennale in 1990. (SPA9; A324-29, A643.) The Koons Works were eventually sold to collectors for many hundreds of thousands of dollars. (A343-47, A659.)

At some point, years after the Koons Works premiered, images of all three Koons Works were publicly displayed on the website www.jeffkoons.com ("Koons Website"), which is owned by the entity Jeff Koons, LLC ("Koons Entity," and together with Koons, "Defendants").

---

[1] In total, the "Made in Heaven" series consisted of approximately thirty works of visual art. (A663.)

6

(A349-52, A645.) These website displays of the Koons Works were accompanied by immediately-adjacent copyright icons indicating that copyrights in the Koons Works are owned by Koons and by text and context indicating that Koons is the sole author of the Koons Works. (A349-52, A646.) The Koons Website has never identified Hayden as an author or copyright owner of the Koons Works or the portions thereof which depict the Original Work. (A319, A646.)

### 3. Hayden Discovers the Koons Works in 2019

Hayden did not learn about the existence of the Koons Works until April 2019, when his then-business partner alerted him to an article published in the online version of an Italian newspaper called *La Repubblica*. (SPA10-11; A296.) The article displayed an image of the Koons Work *Made in Heaven* alongside coverage of a legal dispute between Staller and Sotheby's auction house. (SPA11; A296.) Prior to this discovery, Hayden knew nothing about Koons' "Made in Heaven" series, its origins, or even that Koons was an artist. (SPA10-11; A296, A502.) He had not communicated with Staller or Schicchi since selling them the Original Work in 1988. (A296.)

In fact, Hayden testified in his deposition that, although he read or watched a news story in the mid-1990s that referenced Staller's child custody

battle against a person named "Jeff Koons,"[2] he knew nothing else about

Koons prior to 2019:

> Q:    And before [April 2019], the only thing you are sure you knew
>
> about Mr. Koons was that he had this custody lawsuit in Italy
>
> against [Staller]?
>
> A:    Right.
>
> Q:    And did you know she had been the subject of artworks by him?
>
> A:    No.
>
> Q:    And did you know anything about how they met?
>
> A:    No.
>
> . . .
>
> Q:    And did you know that he was an artist . . . before you read this
>
> article?
>
> A:    No.
>
> . . .
>
> Q:    And he could have been an airplane pilot for all you knew.
>
> A:    Yes.
>
> Q:    Or a construction worker.
>
> A:    Right.

---

[2] Koons and Staller were married briefly following the "Made in Heaven" series. (A745.)

. . .

I knew nothing about him.

(A502. *See also* A486-87, A490, A747-48.)

**B.    Procedural History**

Hayden filed this lawsuit on December 2, 2021, asserting three causes of action: (1) copyright infringement in violation of 17 U.S.C. § 501, *et seq.*; (2) violation of the DMCA's prohibition on distributing false copyright management information, *i.e.*, 17 U.S.C. § 1202(a); and (3) seeking vindication of his authorship rights under the Visual Artists Rights Act, 17 U.S.C. § 106A. (SPA12; A29-31.)  The case was initially assigned to U.S. District Judge Lorna G. Schofield. (A4.)

On July 18, 2022, Judge Schofield largely denied a Rule 12(b)(6) motion to dismiss filed by Koons. (A160-76.) However, the court granted Koons' request to limit the applicable damages period to the three years preceding the filing of the Complaint, based this Court's then-controlling precedent *Sohm v. Scholastic Inc.*, 959 F.3d 39, 52 (2d Cir. 2020). (A176.)

Hayden filed an Amended Complaint on July 28, 2022, adding the Koons Entity as a defendant based on its ownership of the Koons Website. (A178-210.)

The parties filed cross-motions for summary judgment during September and October 2022. On November 3, 2022, the case was reassigned

9

to Judge Timothy M. Reif of the U.S. Court of International Trade, *sitting by designation*. (A9-10.)

While the summary judgment motions were *sub judice*, Hayden sought permission to move for reconsideration of Judge Schofield's damages ruling based on an intervening change of law, *i.e.*, the Supreme Court's decision in *Warner Chappell Music*, which abrogated *Sohm*. (A794-96.)

On January 23, 2025, the District Court held oral argument on the cross-motions for summary judgment and Hayden's request for reconsideration. (A12.) The issue of Defendants' statute of limitation defense took up just the first few minutes of an argument that lasted more than an hour-and-a-half. (A811-816, A826-32.)

On February 25, 2025, the District Court issued the Opinion & Order ("Order") that is the subject of this appeal. The Order denied Hayden's motion for summary judgment and granted Defendants' cross-motion for summary judgment dismissing the lawsuit. (SPA1-29.) Specifically, the District Court held that Hayden's copyright infringement claim is time-barred because he was on inquiry notice of his claims prior to 2019, and that his DMCA claim is thereby rendered moot. (SPA23-24, SPA27-28.) Additionally, the Court held that VARA does not apply to Hayden's

10

Original Work.[3] (SPA25.) Finally, the Court denied Plaintiff's request to move for reconsideration concerning the damages period based on its holding that Hayden's copyright claims are time-barred. (SPA28.)

## SUMMARY OF ARGUMENT

First, the District Court erred when it dismissed Hayden's copyright infringement claim as time-barred. Put simply, the lower court failed to identify or apply the correct legal standard for inquiry notice in discovery rule cases. Hayden first discovered facts suggesting Koons' infringement in 2019, and he filed this lawsuit less than three years later. Yet in ruling that Hayden should have discovered Koons' infringements earlier, the District Court ignored the settled rule that a plaintiff must have actual knowledge of facts that would lead a reasonable person to believe that infringement was *probable* before the limitations period begins to run. *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 607 (2d Cir. 2024); *Meyer v. Seidel*, 89 F.4th 117, 136 (2d Cir. 2023). Instead, the District Court invented and imposed investigatory burdens upon Hayden that have no basis in law.

Further, the lower court disregarded its proper judicial role, the evidentiary burdens on summary judgment, and the record before it when it used its own speculation as to what a single news article Hayden saw in

---

[3] The District Court's ruling with respect to Hayden's VARA claim is not being challenged in this appeal.

11

the mid-1990s – and not in evidence – *might* have said to refute Hayden's sworn testimony as what facts he actually knew at the that time.

Second, the District Court erred when it held that the dismissal of Hayden's copyright claim as time-barred automatically rendered Hayden's DMCA claim moot. The lower court ignored the fact that Hayden's DMCA claim accrued independently based on a separate instance of website publication occurring at a later point in time. The lower court made no determination as to the date on which Hayden was on inquiry notice of that later violation, nor did it identify any facts that could support such a conclusion.

Third, the District Court abused its discretion when it failed to consider and grant reconsideration with respect to the applicable damages period. The Supreme Court held in *Warner Chappell Music* that the Copyright Act does not impose a three-year limit on monetary recovery for timely-filed infringement claims. 601 U.S. 366, 374 (2024).

This Court should reverse and hold that Defendants' statute of limitations defense fails as a matter of law; vacate the dismissal of Hayden's DMCA claim; and grant reconsideration of the damages period.

## STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment *de novo*. *Kowalchuck v. Metro. Transportation Auth.*, 94 F.4th 210, 214 (2d Cir. 2024).

Where the lower court's decision involved factual determinations, the Court reviews those factual findings for clear error while still applying a *de novo* standard to legal conclusions. *See Belot v. Burge*, 490 F.3d 201, 206 (2d Cir. 2007).

The Court reviews the denial of a request to move for reconsideration for abuse of discretion. Yet because "a district court necessarily abuses its discretion when it makes an error of law," the Court reviews legal determinations without deference. *Oliveri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 84 (2d Cir. 2024).

## ARGUMENT

### A. POINT I: THE DISTRICT COURT MADE TWO FUNDAMENTAL ERRORS IN DISMISSING HAYDEN'S INFRINGMENT CLAIM AS TIME-BARRED

#### 1. The Parties' Burdens on Summary Judgment

Summary judgment is warranted where (and only where), "construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). "These principles apply equally" to "an affirmative defense such as the statute of limitations." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995). *See also Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

"The burden is on the defendant to establish when a federal claim accrues." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The Court should not weigh evidence or assess the credibility of witnesses," *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), nor may a party "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### 2. The District Court Failed to Identify or Apply the Correct Legal Standard for Inquiry Notice

In its most glaring error, the District Court failed to identify or apply this Circuit's long-settled legal standard for inquiry notice.

#### i. Legal Standard for Inquiry Notice

Civil actions for copyright infringement must be commenced within three years after the claim accrues. *See* 17 U.S.C. § 507(b). Pursuant to the "discovery rule," an infringement claim does not "accrue" until the copyright holder discovers, or with due diligence should have discovered, the infringement. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124-25 (2d

14

Cir. 2014). This means that the statute of limitations begins to run when a potential plaintiff is put on "inquiry notice" or becomes aware of "storm warnings" sufficient to lead a reasonable copyright plaintiff to discover the infringement. *See Sohm v. Scholastic*, 959 F.3d 39, 51 (2d Cir. 2020) (holding that the defendant must identify "facts or circumstances that would have prompted . . . an inquiry" in order to establish constructive notice under the discovery rule), *abrogated on other grounds by Warner Chappell Music, Inc.*, 601 U.S. 366. *See also, e.g.*, *McDermott v. This Dog's Life Corp.*, 730 F. Supp. 3d 73, 77 (S.D.N.Y. 2024) ("Nor were there any 'storm warnings' that would have put [the plaintiff] on inquiry notice to look for infringement. . . .") (citation omitted); *Masi v. Moguldom Media Grp., LLC*, No. 18 Civ. 2402, 2019 WL 3287819, *5 (S.D.N.Y. July 22, 2019) (collecting cases); *Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, 16 Civ. 617, 2017 WL 432805, *2 (S.D.N.Y. Jan. 30, 2017); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009); *Warren v. Freedenfeld Assocs. Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008).

"The standard for inquiry notice is objective, imputing knowledge to the plaintiff where storm warnings would cause a person of ordinary intelligence to consider it probable that the defendant had engaged in wrongdoing." *Phhhoto Inc.*, 123 F.4th at 607 (internal quotation marks and punctuation omitted). *See also Meyer*, 89 F.4th at 134 ("A duty to inquire arises when the circumstances would suggest to a person of ordinary

15

intelligence *the probability* that he has been defrauded." (emphasis in original) (quotation marks omitted)).

Two elements of this standard bear noting. First, a plaintiff must actually have the relevant triggering information or "storm warnings" in their possession. *See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 432 (2d Cir. 2008) (reversing dismissal where it was unclear that a reasonable investor would have seen news reports referencing the defendant's wrongdoing); *Meyer*, 89 F.4th at 137 (holding that the relevance of public media reports to inquiry notice "depends in large part on whether" the plaintiff "was aware of them – and on their contents."). Second, the triggering information must suggest the *probability* – not just the possibility – of wrongdoing. *See Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 193 (2d Cir. 2003) ("The [existence of] fraud must be probable, not merely possible."). Thus, in *Phhhoto Inc.*, this Court held that a district court erred where it had "failed to follow our precedent requiring a 'probability' of wrongdoing to trigger inquiry notice, instead applying a standard more akin to 'reasonable suspicion.'" 123 F.4th at 609.[4]

---

[4] Indeed, in *Staehr*, the Court concluded that "multiple storm warnings, including four prior lawsuits alleging the same [illegal scheme], widespread reporting of those allegations in mainstream media, and publication of an article in an industry journal highlighting the defendant's potential involvement in this scheme, were *insufficient* to give rise to inquiry notice." *Phhhoto Inc.*, 123 F.4th at 608 (discussing *Staehr*, 547 F.3d at 417-18, 421) (emphasis added).

### ii. The District Court Applied the Wrong Legal Standard

Inexplicably, despite acknowledging that the statute of limitations in this lawsuit is governed by the discovery rule and an inquiry notice standard (SPA18), the District Court concluded that a "'reasonably diligent' person in [Hayden's] position should have discovered the alleged infringement prior to 2019." It did so without first identifying the legal standard for inquiry notice or discussing a single decision of this Court that defines it. (SPA19.)

Instead, the District Court referenced the following facts in the record and simply announced that, under these circumstances, Hayden should have known about Koons' alleged infringements earlier:

- Hayden lived in Rome from 1987 until 2007, and was fluent in Italian;

- Hayden's time in Italy overlapped with the premiere of one of the Koons' Works at the 1990 Venice Biennale art show;

- Hayden watch television and read newspapers, and lived with an Italian national, who also "presumably" consumed news;

- Staller is famous in Italy and is a household name; and

- Koons' "Made in Heaven" series caused a media sensation and scandal, presumably in Italy.

(SPA19-20.)

17

The District Court also charged Hayden with a novel and legally baseless obligation to investigate based solely on his prior relationship with Staller and his presence in Italy. It concluded that, because (a) Hayden sold several theatrical props to Staller during the 1980s, and (b) other people in Italy (though not Hayden) saw media reports about Koons' 1990 Venice Biennale exhibition, Hayden *should* have followed Staller's subsequent career and *should* have heard about her depiction in the art show. (SPA19 ("It is reasonable to expect that someone who created sculptures and stage props specifically for a 'household name' like Staller and who consumed Italian news would hear of her involvement in a major, international art exhibition such as the Venice Biennale."), SPA23 ("It would be a different matter altogether if plaintiff did not reside in Italy during a 20-year period between 1988 and 2019 and had no reason to follow Staller's career.").) The District Court surmised that *if* Haden *had* heard of Staller's involvement in the 1990 Venice Biennale, it would have been unreasonable for him to ignore that information for thirty years without investigating further. (SPA20.)

Even if some basis for these novel obligations could be found in the case law, none of the facts that the District Court charged Hayden with knowing relate to copyright infringement. Rather, they indicate – at most – that Staller was featured in artwork by Koons displayed at the 1990 Venice Biennale. This would not have given Hayden any reason to think that Koons

18

had infringed his Original Work in one of the pieces exhibited. The inquiry notice standard is not triggered until the plaintiff has a reason to suspect probable infringement. *Phhhoto Inc.*, 123 F.4th at 607. But a reasonably diligent person with the knowledge identified by the District Court would have no reason to suspect that infringement of the Original Work was even theoretically *possible*, let alone *probable*. *See Meyer*, 89 F.4th at 137 ("Hearing 'some reference' that was 'not forgery' does not suggest to a person of ordinary intelligence the probability of forgery"); *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 120 (2d Cir. 2017) ("Generalized knowledge that originators issued some defective loans alone would not cause a reasonable investor to believe necessarily that his or her particular PLS certificates were backed by such loans."); *Staehr*, 547 F.3d at 427 ("For inquiry notice to exist, the triggering information must relate directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants.") (quotation marks omitted).

In essence, the District Court charged Hayden with inquiry notice of copyright infringement based solely on the presence of Staller's and Koons' names in news reports that – with one exception discussed below – Hayden did not read or know about. (SPA21 ("[A] reasonably diligent person in plaintiff's position should have at the very least learned that Koons was an artist well before 2019.").) This was clear error. *See Meyer*, 89 F.4th at 138

19

("[A] public report that mentions a defendant's name without any accusation of his wrongdoing does not put the plaintiff on inquiry notice. A person of ordinary intelligence is not put on inquiry notice by name-recognition alone.") (citing *Staehr*, 547 F.3d at 434).

Finally, citing an unabrogated portion of this Court's decision in *Sohm*, the District Court stated that it viewed "the passage of time, especially a multi-decade delay, as probative of the timeliness inquiry." (SPA23.) Yet *Sohm* explicitly held that "without identifying facts or circumstances that would have" placed the plaintiff on inquiry notice, a defendant "cannot rely on the passage of time alone to establish" that a plaintiff "should have discovered the alleged copyright infringements at issue" in the case. *Sohm*, 959 F.3d at 51 (denying defendants' limitations defense for claims that originated twelve years prior to filing).

### iii. The District Court Substituted Its Own Speculation for Hayden's Sworn Testimony

Not only did the District Court fail to consider or apply the proper legal standard for inquiry notice, it also disregarded its own proper role in weighing the evidentiary record on summary judgment.

As noted above, Hayden testified that, prior to 2019, he had no idea who Koons was, apart from being Staller's ex-husband. Hayden did not know that Koons was an artist, or that he had engaged in a collaboration with Staller. (A486-87, A490, A502.)

20

Despite acknowledging Hayden's undisputed testimony, the District Court went on to state, inexplicably:

> Plaintiff concedes that 'he read or watched a news story in or about 1994 that mentioned Ms. Staller's involvement in a child custody lawsuit against a person named "Jeff Koons."' Despite Plaintiff's objections to the contrary, **it is likely** that such a story would at least *mention* the *Made in Heaven* series of artworks, if not include pictures of some of them. . . . This fact would be enough to put a reasonably diligent plaintiff on notice of Koons' use of the Original Work in the Koons Works.

(SPA20-21 (italics in original) (bold and underlining added) (citations omitted).)

In other words, the District Court chose to disbelieve Hayden's sworn testimony – thereby discounting the only record evidence concerning what Hayden knew at the time and what information the referenced news article contained – and replace it with the court's own speculation as to the contents of a thirty-year-old article that was not in evidence. This was also clear error. *See Hayes*, 84 F.3d at 619 ("The Court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment); *Hicks*, 593 F.3d at 166 ("mere speculation or conjecture as to the true nature of the facts [cannot] overcome a motion for summary judgment."). *See also Staehr*, 547

21

F.3d at 428 ("[T]he district court drew factual inferences that were not clearly demonstrated by the press accounts.").

What's more, the District Court applied the wrong legal standard for inquiry notice to its speculative facts. Apparently unaware of this Court's probability requirement, the lower court held that Hayden's supposed constructive knowledge of the mere existence of the "Made in Heaven" series also charged him with constructive knowledge that the Original Work had been infringed via the creation of that series. (SPA21 ("[A] reasonably diligent person in plaintiff's position should have at the very least learned that Koons was an artist well before 2019.").)

***

For all these reasons, the District Court's determination that Hayden's copyright infringement claim is time-barred must be vacated and reversed.

**B. POINT II: THE DISTRICT COURT ERRED WHEN IT DISMISSED HAYDEN'S DMCA CLAIM AS MOOT**

The District Court also erred in ruling that its dismissal of Hayden's infringement claim on limitations grounds automatically moots his separate claim under the DMCA.

Section 1202(a) of the DMCA provides that it is unlawful to "knowingly and with the intent to induce, enable, facilitate, or conceal infringement – (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management

22

information that is false." 17 U.S.C. § 1202(a). To establish a violation of section 1202(a), a plaintiff must demonstrate "that the defendant knowingly provided false copyright information and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 Fed. App'x 6, 9 (2d Cir. 2018) (emphasis omitted).

Hayden's DMCA claim is predicated upon Defendants' publication of images of the Koons Works on the Koons Website alongside false copyright management information ("CMI"). These website displays – which are themselves also potentially infringing acts under 17 U.S.C. § 501 – were distinct from Koons' original acts of alleged infringement via the creation and exhibition of the Koons Works in the early 1990s,[5] and they continued even after Koons was put on notice of Hayden's infringement claims. (A319-20, A645-46.)

Even if, as the District Court incorrectly held, Hayden's 17 U.S.C. § 501 claim with respect to the original infringements were time-barred, that would not mean that he cannot still maintain a DMCA claim based on the much later publication of false CMI intended to conceal Koons' prior infringements. *See Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 671 (2014)

---

[5] Judicial notice may be taken of that fact that internet websites did not exist in 1990 when the Koons Works were created and first exhibited. *See United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (recognizing that courts may take judicial notice of "matters of common knowledge" and "facts capable of verification.").

23

("It is widely recognized that the separate-accrual rule attends the copyright statue of limitations. . . . Each time an infringed work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrues' at the time the wrong occurs. In short, each infringing act starts a new limitations period.").

The District Court made no independent factual finding as to the date that the website postings with false CMI first occurred, nor did it address how or when Hayden was charged with inquiry notice of the separately-accruing claim. Therefore, the lower court's dismissal of Hayden's DMCA claim was also clear error.

## C. POINT III: THE DISTRICT COURT ERRED WHEN IT FAILED TO GRANT RECONSIDERATION OF THE DAMAGES PERIOD

Finally, the District Court abused its discretion when it failed to grant reconsideration of its prior holding with respect to the applicable damages period.

In *Warner Chappell Music*, the Supreme Court held that when copyright infringement claims are timely filed under the discovery rule, a successful plaintiff may obtain all damages arising from those claims, regardless of when the damages arose or the infringement occurred. *See Warner Chappell Music, Inc.*, 601 U.S. at 368 ("We hold that no such limit [imposing a three-year lookback period] on damages exists. The Copyright Act entitles a copyright owner to recover damages for any timely claim."). *Warner Chappell*

24

*Music* abrogated this Court's prior holding in *Sohm*, upon which Judge Schofield's damages ruling relied. (A176.)

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsideration of an interlocutory order under Rule 54(b) is properly founded upon "an intervening change of controlling law . . . or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Because the District Court's determinations with respect to the timeliness and viability of Hayden's infringement and DMCA claims were clearly erroneous, the District Court also abused its discretion by refusing to grant reconsideration of Judge Schofield's three-year damages limitation.

This Court should reverse and hold that there is no three-year restriction on the damages period for Hayden's infringement claim.

## **CONCLUSION**

For all the reasons discussed herein, this Court should vacate the District Court's Order and reverse to grant (i) summary judgment in Hayden's favor on Defendants' statute of limitations affirmative defense, and (ii) reconsideration with respect to the applicable damages period. The

25

Court should also vacate the District Court's dismissal of Hayden's DMCA claim.

Dated: New York, New York
     June 2, 2025

Respectfully submitted,

**FLETCHER LAW, PLLC**

By: _____
     Jordan Fletcher
     234 Fifth Avenue, 2nd Floor
     New York, NY 10001
     jordan@fletcherlaw.co
     (212) 320-8945
     *Counsel for Plaintiff-Appellant*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because, excluding those portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5477 words, as counted by Microsoft Word.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Palatino font (with footnotes in 13-point Palatino font).

Dated: New York, New York
      June 2, 2025

**FLETCHER LAW, PLLC**

By: _____
       Jordan Fletcher

27