25-498-cv
*Hayden v. Koons*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2025

(Argued: December 10, 2025     Decided: July 21, 2026)
Docket No. 25-498-cv

MICHAEL A. HAYDEN,

*Plaintiff-Appellant*,

*v.*

JEFF KOONS, JEFF KOONS LLC,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

CHIN, SULLIVAN, and LEE, *Circuit Judges*.

Appeal from an opinion and order of the United States District

Court for the Southern District of New York (Reif, *J.*, sitting by designation)

granting defendants-appellees' cross-motion for summary judgment on statute of

limitation grounds and dismissing the operative complaint. On appeal, plaintiff-appellant challenges the district court's dismissal of the copyright infringement claim as time-barred, its conclusion that the Digital Millenium Copyright Act claim was rendered moot, and its denial of the request for reconsideration of the scope of damages.

AFFIRMED.

---

JORDAN FLETCHER, Fletcher Law, PLLC, New York, NY,
*for Plaintiff-Appellant.*

DANIEL J. BROOKS, Scarola Zubatov Schaffzin PLLC,
New York, NY, *for Defendants-Appellees.*

---

CHIN, *Circuit Judge*:

Plaintiff-appellant Michael Hayden, an American artist who lived and worked primarily in Italy in the late 1980s, created a large Styrofoam sculptural work depicting a snake wrapped around boulders for Ilona Staller, a famous Italian adult film star and politician, to use during her "live erotic performances." Joint App'x at 628. Hayden sold the sculpture to Staller, better known by her stage name, Cicciolina, in approximately 1988. A year later, defendant-appellee Jeff Koons, an American artist, hired Staller to pose for erotic

photos with him on her sets for an upcoming art exhibition. One of the sets on which they posed was Hayden's Styrofoam structure. Koons then used the photos to create several pieces of art, three of which showed him and Staller posing on the Styrofoam structure. These pieces were included in Koons's *Made in Heaven* series and were widely displayed in Italy and beyond beginning around 1989. Hayden contends he did not discover Koons's allegedly infringing use of the Styrofoam structure until decades later, in 2019, when he came across a news article discussing the *Made in Heaven* works.

Hayden filed suit against Koons in December 2021 and added Jeff Koons LLC as a defendant in July 2022. On cross-motions for summary judgment, the district court ruled, *inter alia*, that Hayden's copyright infringement claim was time-barred, thus rendering Hayden's Digital Millenium Copyright Act (the "DMCA") claim and request for reconsideration of the scope of damages moot. Hayden appeals, arguing that the district court (1) erred in dismissing his copyright infringement claim as time-barred because it applied the wrong standard, (2) erred in dismissing his DMCA claim as moot because it accrued independently based on later website posts, and (3) abused its discretion in denying his request for reconsideration as to the damages period.

For the reasons set forth below, the opinion and order of the district court is AFFIRMED.

## BACKGROUND

### I.  *The Facts[1]*

#### A.  *The Parties*

##### 1.  *Hayden*

From around 1980 to 2007, Hayden, a United States citizen, lived primarily in Rome, Italy, where he worked as an artist.  Hayden held various roles, including as a self-employed visual artist, set and prop designer for live theater companies, interior designer, and residential architect.  While residing and working in Italy, Hayden immersed himself in the local culture: he became fluent in Italian, lived with his then-partner Sergio Meschino, an Italian citizen, and consistently consumed Italian news and other media via television programs, movies, and daily Italian newspapers.

---

[1]  On appeal following a district court's grant of summary judgment, we "constru[e] the evidence in the light most favorable to the party against whom summary judgment was granted and draw[] all reasonable inferences in that party's favor."  *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021).

### 2. *Koons and Jeff Koons LLC*

Koons is, as Hayden described in his complaint, a globally recognized "contemporary American 'appropriation artist.'" Joint App'x at 179 ¶ 3.[2] Apart from the publicity surrounding his artwork, Koons's personal life has also been the center of global attention. In the early 1990s, Koons began a relationship with Staller after collaborating with her artistically. Staller, through her work as both an adult film star and member of the Italian Parliament, was "a celebrity and household name in Italy," *id.* at 296 ¶ 19, and her relationship with Koons generated much attention. Their 1991 marriage was highly publicized in Italy and beyond, as was news of their divorce proceedings and child custody battle that followed a few years later.

Koons operates Jeff Koons LLC, which manages his website. The website displays several pieces of Koons's artwork, including the pieces at issue in this appeal, which have been displayed on the website "for many years." *Id.* at 189 ¶ 44.

---

[2] "Appropriation artists take other artists' work and use it in their own art, appropriating it and incorporating it in their own product with or without changes." *Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007).

B.    *The Art*

1.    *Hayden's Work*

While residing in Italy in the 1980s, Hayden created various sculptural works for Diva Futura, an Italian production company owned by Staller and her manager and director, Riccardo Schicchi.  Through his work with Diva Futura, Hayden learned of Staller's interest in snakes and decided to build a serpentine structure on which Staller could perform during her live shows and film productions.  The structure, which Hayden made from Styrofoam, glue, gauze, and plaster, depicted a serpent wrapping itself around a pedestal of boulders.  The sculpture was approximately 6.56 feet long, 3.26 feet wide, and 1.96 feet tall.  Hayden designed it to be low enough for Staller to easily step onto and created a flat top so she could use it as a platform during her performances.

After completing the structure, Hayden sold it to Diva Futura in 1988 for approximately $900 in cash.  There was no contract reflecting the sale, nor did Hayden discuss with Diva Futura the copyright or exploitation of the work or third-party use of the sculpture.  After selling the structure, Hayden made no further sales to Diva Futura and had no contact with Staller and Schicchi.

### 2. *Koons's Works*

In early 1989, Koons was commissioned by the Whitney Museum of American Art (the "Whitney") to create a billboard to be displayed in an upcoming exhibition. As part of this project, Koons hired Staller to pose for erotic photos with him on her sets and in her studio. At the time, Koons did not have a relationship with Staller but had seen her work in various magazines. Koons intended for the photos to be similar to Staller's other works, and thus hired her usual photographer, Schicchi, and her typical stylists and staff to ensure authenticity in his production. One of the sets on which Koons and Staller posed was the Styrofoam serpentine structure Hayden sold Diva Futura a year earlier.

Koons used the photos of him and Staller to create various works that comprised his *Made in Heaven* series, three pieces of which are at issue in this case. The first piece, *Made in Heaven*, is a lithograph, created in 1989, that was first displayed as a billboard in New York City. The lithograph depicts Koons and Staller posing atop Hayden's serpentine structure. Koons is nude, laying his arm across Staller and staring into the camera, while Staller, dressed in white lingerie, lays beneath Koons with her head tilted backward. The billboard was

designed as an advertisement for a film featuring Koons and Staller that ultimately was never produced.

The second piece, *Jeff and Ilona (Made in Heaven)*, is a polychromed wood sculpture created in 1990 and first displayed at the Venice Biennale the same year. The sculpture again depicts Koons and Staller posing atop the serpentine structure. Koons is nude and gazing at Staller, who lays beneath him dressed in white lingerie with her head tilted backward.

The last piece, *Jeff in the Position of Adam*, is an oil on canvas created in 1990. This work again portrays Koons and Staller posing atop Hayden's structure. Koons is pictured leaning back on the structure, resting one elbow on the pedestal and two hands on Staller, who is laying down and looking up. This piece was sold to a private collector, but "has been exhibited publicly on numerous occasions." *Id.* at 644-45 ¶ 46.

The *Made in Heaven* series sent shockwaves through the art scene: it "caused a media sensation and scandal when it premiered" and "is regularly credited with launching Mr. Koons into the art world's stratosphere." *Id.* at 186 ¶ 37. The first display of the *Made in Heaven* billboard, for example, immediately drew international attention, and photos of Koons and Staller posing on the

serpentine structure adorned the cover of the April-May 1990 issue of *Galeries Magazine*, a French publication.  Inside, the magazine included a photo of the *Made in Heaven* billboard being displayed in New York City, followed by an interview, reproduced in both French and English, in which Koons discussed his forthcoming work.  Koons also described the *Made in Heaven* series in an interview published in the Summer 1990 issue of *Flash Art*.

Publicity only increased as Koons and Staller's working relationship turned romantic, and Koons's display at the 1990 Venice Biennale garnered even more attention.  As the August 1990 issue of *Vogue* exclaimed, alongside photos of Koons's art, "all the talk was of Jeff Koons" at the Venice Biennale.  *Id.* at 555. *Vogue* went on to describe Koons as "the most provocative young American artist of the moment," and, together with Staller, a celebrity in her own right, they were "the media sensation of the 1990 Venice Biennale."  *Id.*

Following its debut, the *Made in Heaven* series continued to garner international attention.  The three works have been publicly displayed at several museums and galleries across the world.  The record also provides several examples of the extensive publicity the *Made in Heaven* series received in the more than thirty years since its debut.  For example, in 2013, Koons gave the

James T. Demetrion Lecture at the Hirshhorn Museum and Sculpture Garden, in which he described working with Staller, her sets, and her photographer on the *Made in Heaven* series. The following year, the Whitney curated a retrospective exhibition about Koons. As its website explained, "Koons is widely regarded as one of the most important, influential, popular, and controversial artists of the postwar era." *Id.* at 523. The Whitney website included photos of *Made in Heaven* and described Koons's work and relationship with Staller as having "caused a media sensation." *Id.* at 525. As part of the retrospective exhibition, the curator, Scott Rothkopf, published an essay in the Whitney's exhibition catalogue in 2014 detailing Koons's career. The essay detailed Koons's work with Staller and compiled many of the accolades bestowed on Koons over the course of his career: "the hottest young artist in America," "the ultimate entrepreneur of the new art market" in the 1980s, and "one of the most famous and popular artists on this planet." *Id.* at 529 (citation modified).

C. *Hayden's Discovery of Koons's Work*

Hayden had general familiarity with both Staller and Koons, but he did not *actually* discover Koons's allegedly infringing works until approximately three decades after Koons's original works were made. Specifically, in April

- 10 -

2019, Hayden's then-business partner, Meschino, notified him of a *La Repubblica* article discussing a lawsuit between Staller and Sotheby's regarding publication of the *Made in Heaven* works. The article included a photo of *Made in Heaven*, in which Koons and Staller are laying atop Hayden's Styrofoam structure.

After discovering Koons's works, Hayden filed an application for copyright registration of his structure in August 2019. The U.S. Copyright Office granted Hayden's application in early 2020, and issued a Certificate of Registration, effective August 7, 2019. In March 2020, Hayden's counsel sent a letter to Koons's counsel alleging violations of the Copyright Act, the Visual Artists Rights Act ("VARA"), and the DMCA.

## II.     *Procedural History*

Hayden filed this lawsuit in December 2021 alleging (1) copyright infringement, in violation of 17 U.S.C. § 501 *et seq.*; (2) false copyright management information, in violation of the DMCA; and (3) false claims of authorship, in violation of VARA. In July 2022, the district court (Schofield, *J.*) denied Koons's motion to dismiss, but, based on then-controlling precedent, granted Koons's request to limit the applicable damages period to the three years preceding the filing of the complaint.

- 11 -

Hayden then filed the now operative complaint (the "Complaint") in which he reasserted the above-listed claims and added Jeff Koons LLC as a defendant. On September 15, 2022, Hayden filed a motion for summary judgment, and on October 5, 2022, Koons and Jeff Koons LLC (together "Koons") filed a cross-motion for summary judgment. In November 2022, the case was reassigned to Judge Reif.

Following the Supreme Court's decision in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024), Hayden filed a letter in June 2024 seeking leave to file a motion for reconsideration of the district court's earlier decision regarding the scope of available damages. The district court heard oral argument in January 2025 on the outstanding motions and request to move for reconsideration of the scope of damages.

On February 25, 2025, the district court issued an opinion and order in which it denied Hayden's motion for summary judgment, denied Hayden's request to move for reconsideration of the scope of available damages, and granted Koons's cross-motion for summary judgment dismissing the Complaint. As relevant here, the district court concluded that Hayden's copyright infringement claim was time-barred, and that therefore Hayden's DMCA claim

- 12 -

and request for reconsideration of the scope of damages were rendered moot. In assessing the timeliness of Hayden's claim, the court concluded -- based on Hayden's fluency in Italian, consumption of Italian news, familiarity with Staller, own sworn statement about Koons's notorious career, as well as the timing of his residency in Italy in relation to Koons's exhibition at the Venice Biennale -- that "[a] 'reasonably diligent' person in plaintiff's position should have discovered the alleged infringement prior to 2019." Sp. App'x at 19; *see also id.* at 19-23. And because "[t]here was no actionable copyright infringement," *id.* at 28, the district court concluded that the DMCA claim could not proceed independently and dismissed it as moot.[3]

This appeal followed.

---

[3]     The district court did not separately enter judgment, but under Federal Rule of Civil Procedure 58, judgment is considered entered after 150 days of the order dismissing the case. *See* Fed. R. Civ. P. 58(c)(2)(B); *Arzuaga v. Quiros*, 781 F.3d 29, 33 (2d Cir. 2015).

*DISCUSSION*

Hayden presents two principal issues on appeal.  He argues that the district court erred by (1) dismissing his copyright infringement claim as time-barred and (2) dismissing his DMCA claim as moot.[4]

**I.      *The Copyright Infringement Claim***

Hayden first contends that the district court erred in dismissing the copyright claim based on the discovery rule.

**A.      *Standard of Review***

"We review a district court's grant of summary judgment *de novo* where the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other."  *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 943 F.3d 568, 576-77 (2d Cir. 2019) (citation modified).  With cross-motions, "we evaluate each party's motion on its own merits and draw all reasonable inferences against the party whose motion we are considering."  *Granite State Ins. Co. v. Primary Arms, LLC*, 161 F.4th 160, 168 (2d Cir. 2025) (citation modified).  Summary judgment is proper when "there is no genuine

---

[4]      Hayden's third claim on appeal, that the district court abused its discretion in denying his request for reconsideration of its ruling as to the scope of damages, is moot in light of our rulings on the merits.

dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).

### B. *Applicable Law*

A copyright claim must be brought "within three years after the

claim accrued." 17 U.S.C. § 507(b). In determining when a claim accrued, this

Court applies the "discovery rule." *See Psihoyos v. John Wiley & Sons, Inc.*, 748

F.3d 120, 124 (2d Cir. 2014) (adopting the discovery rule for copyright

infringement claims); *see also Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020)

(reaffirming this Court's adherence to the discovery rule), *abrogated on other*

*grounds by Warner Chappell Music*, 601 U.S. 366.[5]

Pursuant to the discovery rule, "copyright infringement claims do

not accrue until actual or constructive discovery of the relevant infringement."

---

[5]     In *Warner Chappell Music*, the Supreme Court held that damages for copyright
infringement were not limited to the three-year period prior to the filing of suit. 601
U.S. at 372. The Court declined, however, to decide the question of whether the
discovery rule applies in copyright cases. *Id*. at 368 ("In this case, we assume without
deciding that a claim is timely under [the Copyright Act] if brought within three years
of when the plaintiff discovered an infringement, no matter when the infringement
happened."); *see also id*. at 371 (noting that the question for which certiorari was granted
"assume[s] that the discovery rule governs the timeliness of copyright claims," but that
the Court has "never decided whether that assumption is valid"). Eleven circuits,
including ours, have reached the question and held that the discovery rule applies. *See*
*Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 & n.4 (2d Cir. 2024), *cert.*
*denied*, 145 S. Ct. 2792 (2025) (collecting cases).

*Psihoyos*, 748 F.3d at 125. In other words, claims accrue when "the copyright holder discovers, or with due diligence should have discovered, the infringement." *Id.* at 124. A plaintiff thus "has the length of time it takes, using due diligence, to discover the infringement; only from that point does the statute of limitations begin to run." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 151 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2792 (2025).

Here, the parties do not dispute that Hayden did not have *actual* knowledge of the alleged infringement before 2019. Instead, this appeal turns on whether Hayden *should have* discovered the alleged infringements more than three years prior to when he filed suit in December 2021.

Determining "[t]he date on which a copyright holder, with the exercise of due diligence, would have discovered an infringement . . . is a fact-intensive inquiry." *Id.* at 152. In establishing a statute of limitations defense, a defendant cannot rely simply on the copyright holder's sophistication or the passage of time since the alleged infringement. *See id.* at 148, 154 n.8 (rejecting a categorical "sophisticated plaintiff" exception to the discovery rule); *Sohm*, 959 F.3d at 51 (explaining that defendants cannot "rely on the passage of time alone" to establish that a plaintiff should have discovered the alleged infringement).

Instead, the defendant must identify facts or circumstances that would have led a copyright holder, acting with due diligence, to have discovered the alleged infringement more than three years before filing suit. *Michael Grecco Prods.*, 112 F.4th at 150-51; *Sohm*, 959 F.3d at 51; *see also Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) ("A cause of action accrues when a plaintiff knows or *has reason to know* of the injury upon which the claim is premised." (emphasis added)).

On appeal, Hayden suggests a heightened standard for the discovery rule that our precedent does not require. Relying primarily on logic from this Circuit's securities fraud cases, Hayden contends that (1) a plaintiff has constructive knowledge only if he is on inquiry notice, that is, the circumstances have triggered a duty to inquire, and (2) as part of the inquiry notice standard, "a plaintiff must have actual knowledge of facts that would suggest the *probability* that infringement had occurred." Appellant's Br. at 1; *see also id.* at 11 ("[T]he District Court ignored the settled rule that a plaintiff must have actual knowledge of facts that would lead a reasonable person to believe that infringement was *probable* before the limitations period begins to run.").

Hayden's arguments for a heightened standard fail for the following reasons. First, as the Supreme Court explained in *Merck & Co. v. Reynolds*, 559

- 17 -

U.S. 633 (2010), inquiry notice and constructive discovery are not the same. In *Merck*, the Court explained that "discovery," as used in the statute of limitations for securities fraud, 28 U.S.C. § 1658(b)(1), encompasses both actual and constructive discovery. *Merck*, 559 U.S. at 648, 651-53. While some circuits had used "discovery" and "inquiry notice" interchangeably, *id.* at 650, the Court rejected this approach. The Court reasoned that although "terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating," "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation' . . . *irrespective of whether the actual plaintiff undertook a reasonably diligent investigation*." *Id.* at 653 (emphasis added).[6] Indeed,

---

[6] In securities fraud cases, "inquiry notice" is commonly understood as "the point at which a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry." *Merck*, 559 U.S. at 650 (citation modified). In other words, inquiry notice requires an objective assessment of whether "the information provided . . . trigger[ed] notice with sufficient storm warnings to alert a reasonable person to the probability" of the defendant's wrongdoing. *Meyer v. Seidel*, 89 F.4th 117, 134-35 (2d Cir. 2023) (citation modified). We often consider inquiry notice and storm warnings in tandem, and in assessing the sufficiency of storm warnings we closely scrutinize relevant news reports, the scope of publication, the typical audience, and the level of detail included. *See id.*; *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 412-16 (2d Cir. 2008).

the Court squarely "reject[ed] 'inquiry notice' as the standard generally." *Merck*,

559 U.S. at 652. Even though *Merck* interprets a specific statute of limitations in a

different context, the Court's clarification is instructive here.[7] Accordingly,

although inquiry notice "may be useful," it is not the standard for constructive

discovery in copyright infringement claims. *Merck*, 559 U.S. at 653.

Second, because inquiry notice is not the standard, actual

knowledge of triggering information -- an element of inquiry notice -- is likewise

not required for constructive discovery. As Hayden's counsel acknowledged at

oral argument, this Court has not "explicitly said whether . . . affirmative

evidence must be known to the plaintiff." Oral Argument at 26:26, *Hayden v.*

*Koons* (No. 25-498-cv), https://ww3.ca2.uscourts.gov/oral_arguments.html. We

have never adopted a requirement that plaintiffs have actual knowledge of

triggering information in the context of copyright infringement cases, and we

---

[7]     In defining the discovery rule in the copyright context, our sister circuits have similarly looked to other statutes of limitations. *See, e.g.*, *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44-45 (1st Cir. 2008) (analogizing to inquiry notice and storm warnings as used in the securities fraud context); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (same); *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615-16 (7th Cir. 2014) (adopting *Merck*'s distinction between inquiry notice and discovery). District courts within this Circuit have done the same. *See, e.g.*, *Fioranelli v. CBS Broad. Inc.*, 551 F. Supp. 3d 199, 249 (S.D.N.Y. 2021); *McDermott v. This Dog's Life Corp.*, 730 F. Supp. 3d 73, 79 (S.D.N.Y. 2024).

decline to do so today. To require actual knowledge as part of the constructive discovery analysis would conflate actual and constructive discovery and render the latter prong of the discovery rule a nullity.

In sum, constructive discovery turns on both reasonableness and due diligence. The proper analysis requires an assessment of whether the defendant has identified sufficient facts or circumstances from which a reasonable copyright owner, with the exercise of due diligence, should have discovered the alleged infringement. *See Michael Grecco Prods.*, 112 F.4th at 150-52; *Sohm*, 959 F.3d at 50-51.

C. *Application*

The district court held that "a 'reasonably diligent' person in [Hayden's] position should have discovered the alleged infringement prior to 2019." Sp. App'x at 19. We agree. The district court did not err in concluding that Hayden's claim was time-barred.

To begin, Hayden lived in Italy for almost three decades and immersed himself in the local culture. He was fluent in Italian, watched and read local news, lived with an Italian citizen, and actively immersed himself in

- 20 -

the local art scene, through which he repeatedly worked directly with Staller and her production company.

Hayden's time in Italy also overlapped with the premiere of Koons's artwork at the Venice Biennale, where "all the talk was of Jeff Koons." Joint App'x at 555. As Hayden himself described, "[t]he *Made in Heaven* series caused a *media sensation and scandal* when it premiered" and "is regularly credited with launching Mr. Koons into the art world's stratosphere." *Id.* at 180 (emphasis added).[8] That "sensation and scandal" led international news sources -- including the April-May 1990 issue of *Galeries Magazine* and the August 1990 issue of *Vogue* -- to provide extensive coverage of Koons's controversial work, with several photos of Koons and Staller atop Hayden's Styrofoam structure. Notably, this "scandal" occurred more than three decades ago, yet Koons's art has continued to receive publicity and has been displayed at museums across the world in the decades since its premiere. Although Koons "cannot rely on the passage of time alone to establish that [Hayden] should have discovered the alleged copyright infringement[]," *Sohm*, 959 F.3d at 51, the long duration of time

---

[8]      The statements made in the Complaint are judicial admissions to which Hayden is bound. *See In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (per curiam).

that has passed, coupled with the extensive publicity the three *Made in Heaven* works have received in the ensuing years, is surely relevant.

Further, Koons and Staller are both well-known public figures. As Hayden himself described in his Complaint, "Koons is one of the most controversial living contemporary artists in the world" and is "known widely as an 'appropriation artist.'" Joint App'x at 185 ¶¶ 32-33. Further, as Hayden noted, Koons's popularity preceded his publication of the works at issue: "prior to *Made in Heaven*, Koons had become one of the most famous young artists in the world." *Id.* at 188 ¶ 39 (citation modified). Staller was also famous in her own right. As Hayden explained, Staller was "famous in Italy," a "household name," and of "public interest." *Id.* at 487. In short, Koons and Staller, and the art they were featured in, garnered international attention.

Taken together, the undisputed facts here -- the decades Hayden spent in Italy, which overlapped with the media scandal surrounding the *Made in Heaven* premiere, Hayden's consumption of Italian news, his direct connection to Staller and the art world, Staller and Koons's international fame, and the passage of almost three decades -- establish as a matter of law that a reasonably diligent

- 22 -

copyright holder should have discovered the alleged infringement more than three years prior to when Hayden filed suit.

Despite these facts and circumstances, Hayden contends that he knew nothing about Koons before 2019, apart from general awareness of Koons's public custody battle with Staller "[b]ecause it was in all the newspapers" or "on the television." *Id.* But as explained above, Hayden's actual knowledge is not determinative. The question is not whether *Hayden* was actually aware of the allegedly infringing art; rather, it is whether a *reasonable copyright owner* should have been aware of it. On the record before us, a reasonable factfinder could only conclude that, with due diligence, Hayden should have learned of the alleged infringement of his work in the almost thirty years from 1989 and 1990 (when Koons created and debuted the allegedly infringing works) until December 2018 (three years before suit was filed).

To be clear, our consideration of Koons's fame and related media coverage does not, as Hayden suggests, create some form of "celebrity privilege," Reply Br. at 1, because our analysis does not hinge on Koons's fame alone. Instead, widespread news coverage, international fame, and long-lasting popularity are just some of many factors to consider. We do not expect a

reasonable copyright holder to scour the news, comb through the internet, or keep apprised of pop culture. At the same time, however, the discovery rule does not allow plaintiffs to bury their heads in the sand, ignore widespread international media coverage of allegedly infringing art, and then sue for potential infringement some thirty years later. *See City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011) (underscoring that statutes of limitations "extinguish[] a plaintiff's remedy after he has slept on his claim for a prolonged period of time" to prevent plaintiffs "from unfairly surprising defendants by resurrecting stale claims").

Accordingly, the district court correctly determined that Hayden's copyright infringement claim is time-barred, and thus it properly granted Koons's cross-motion for summary judgment.

## II.    *The DMCA Claim*

Hayden next challenges the district court's dismissal of the DMCA claim as moot. Specifically, Hayden seemingly argues that the separate-accrual rule from *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), which involved the accrual of copyright infringement claims, applies to DMCA claims as well. On Hayden's telling, even if his original infringement claims were

- 24 -

time-barred, the "publication of images of the Koons Works on the Koons Website alongside false copyright management information" was a "distinct" illegal act, Appellant's Br. at 23, that "accrued independently from [Hayden's] infringement claim," *id.* at 1-2.

"It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (citation modified). "Merely typing out the key words or merely incanting the key phrase without offering any argument or explanation of the point to the district court is insufficient to preserve the issue for appeal." *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) (citation modified).

Here, Hayden did not adequately raise before the district court the argument that DMCA claims accrue separately from infringement claims. Koons argued repeatedly below that if Hayden's copyright infringement claim failed, the DMCA claim would necessarily fail too. *See, e.g.*, Joint App'x at 98, 111 (Defendant's Memorandum of Law in Support of Motion to Dismiss the Complaint) (arguing that § 1202(a) only applies "where there is copyright infringement"); *id.* at 760 (Defendants' Reply Memorandum of Law in Support of Cross-Motion for Summary Judgment) (same). Nowhere below did Hayden

assert, as he now does on appeal, that DMCA claims accrue separately from the infringement claims. In fact, Hayden only mentioned *Petrella*'s separate-accrual rule in the context of damages, while making just general assertions of timeliness as to all claims. *See, e.g., id.* at 259 (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment) ("Hayden's Claims Were Timely Filed."). Such conclusory assertions are insufficient to preserve the specific argument he now makes on appeal. *See Doe*, 6 F.4th at 410.

Although this rule is prudential and we may exercise our discretion to consider arguments not preserved for appeal, we decline to do so here, where the arguments were available to Hayden below. *See Allianz Ins. Co.*, 416 F.3d at 114.

Moreover, even if preserved for our review, Hayden's argument is not sufficiently presented for appeal. "When a party fails adequately to present arguments in an appellant's brief, we consider those arguments abandoned." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004). Simply mentioning an issue in "a perfunctory manner, unaccompanied by some effort at developed argumentation" is insufficient. *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 428 (2d Cir. 2023) (citation modified); *see, e.g., Tolbert*

*v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001) (concluding that an argument was abandoned where defendants asserted it in a "single perfunctory sentence" in a footnote and failed to include any "analysis or discussion" of the disputed legal issue).

While Hayden argues on appeal that the district court erred in dismissing his DMCA claim as moot, he does so in a wholly conclusory manner. He provides no legal analysis of the central, disputed question: whether DMCA claims accrue independent of copyright infringement claims. Instead, he provides only a "see" citation to *Petrella*, seemingly assuming that *Petrella*'s separate-accrual rule, decided in the context of copyright infringement, applies to DMCA claims. This, however, remains an open question. *Compare Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026 (9th Cir. 2019) (concluding, in the context of an alleged violation of 17 U.S.C. § 1201, that although the same statute of limitations applies to copyright infringement and DMCA claims, "there is no parallel separate-accrual rule that applies to [a] DMCA claim"), *with Trombetta v. Novocin*, No. 18-CV-993 (RA), 2021 WL 6052198, at *9 n.6 (S.D.N.Y. Dec. 21, 2021) (explaining that the parties did not cite and the district court did not find "any court that has held that the separate-accrual rule endorsed by the

- 27 -

Supreme Court in *Petrella* does *not* apply to DMCA claims under § 1202").

Hayden's appellate brief provides no analysis of this dispute, and thus he has abandoned the argument. *See State St. Bank & Tr. Co.*, 374 F.3d at 172.

Accordingly, we decline to consider Hayden's arguments in this respect as they were neither properly preserved nor presented for appeal.

*CONCLUSION*

For the reasons set forth above, we AFFIRM the district court's opinion and order.